UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TERRY WAYNE WILLIAMS,

       Plaintiff,

v.

       Case No. 2:24-cv-78

       Hon. Hala Y. Jarbou

HEIDI E. WASHINGTON, et al.,

       Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Unknown "John Does" and "Jane Does," Corrigan, Woodgate, and Dicus for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims against Defendants Unknown "John Does" and "Jane Does," Corrigan, Woodgate, and Dicus without prejudice. The Court will also dismiss, for failure

to state a claim, Plaintiff's Fifth and Fourteenth Amendment claims against remaining Defendants Washington and Horton. Plaintiff's Eighth Amendment and supplemental state law claims against Defendants Washington and Horton will remain in the case. The Court will deny Plaintiff's request for class certification.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff names as Defendants MDOC Director Heidi E. Washington, and the following URF staff: Warden Connie Horton, Assistant Deputy Warden James Corrigan, Correctional Officer J. Woodgate, Correctional Officer Unknown Dicus, and Unknown "John Does" and "Jane Does."

Plaintiff's allegations concern the conditions within URF in 2020 as they related to the COVID-19 pandemic. Specifically, he claims that the precautions taken by the MDOC were insufficient to prevent the spread and effects of COVID-19. (Compl., ECF No. 1, PageID.4–5.) From March 22, 2020, to March 26, 2020, the number of prisoners testing positive for COVID-19 increased from six to fourteen. (*Id.*) Although the MDOC required testing for prisoners, it did not mandate the same testing for staff. (*Id.*) And, for "2 days in a row" (the dates of which are not specified) the MDOC allowed prisoners to play basketball without masks, while officers, also not wearing masks, stood by. (*Id.*)

Plaintiff incorporates within his complaint the factual allegations set forth in the Court's opinion in *Brooks v. Washington*, No. 2:21-cv-19, 2021 WL 2024706 (W.D. Mich. May 21, 2021) (*Brooks I*) *vacated and remanded,* No. 21-2639, 2022 WL 22629162 (6th Cir. Mar. 30, 2022). (ECF No. 1, PageID.3) Specifically, Plaintiff claims that, in 2020, URF administration was aware

that URF prisoners were "housed in seven- and eight-man cubes . . . within six feet of each other," making it impossible for them to practice social distancing. *Id.* at *2. While URF was designed to hold 500 to 600 prisoners, it was, at the time, housing approximately 1,200 prisoners and supplied inadequate ventilation. (ECF No. 1, PageID.4.) In each dorm of 150 prisoners, prisoners were required to share toilets, showers, urinals, and sinks. (*Id.*, PageID.6.) During this time, "URF Administration" scheduled correctional officers to move back and forth between units that contained prisoners who were infected with COVID-19 and those that did not. (*Id.*) Correctional officers working within the "E unit," including Defendants Woodgate and Dicus, worked without wearing PPE or a mask. (*Id.*, PageID.7.) Plaintiff alleges that these conditions increased the chances that prisoners would be exposed to COVID-19. (*Id.*, PageID.4.)

Plaintiff alleges that, on or around October 7, 2020, Defendant Woodgate "came to work infected" with COVID-19 and was ordered to leave the facility. (*Id.*, PageID.3.) Plaintiff claims that the first serious case of COVID-19 arose in the E unit of URF, where Plaintiff resided. (*Id.*) Approximately one-and-a-half-months later, on or around November 17–19, 2020, Plaintiff tested positive for COVID-19. (*Id.*)

Defendants Horton and Corrigan and "shift command and superior staff" allowed Plaintiff's E unit to interact with the general population until December 8, 2020, when they ordered a lock down of the facility. (*Id.*, PageID.3.) Plaintiff and others were also "improperly quarantined and/or allowed to remain in the units" with the ceiling fans running, thereby spreading COVID-19. (*Id.*, PageID.7.) Plaintiff alleges that this behavior was "irresponsible" and showed a "blatant disregard for human life." (*Id.*, PageID.3.)

Plaintiff again contracted COVID-19 in 2022. (*Id*, PageID.7.)

Plaintiff indicates he intends to bring claims for violation of his Fifth, Eighth, and Fourteenth Amendment rights, as well as his rights under state law. (*Id.*, PageID.1.) He seeks declaratory, injunctive, and monetary relief. (*Id.*, PageID.8–9.)

## II. Class Certification

Plaintiff indicates that he intends to bring his claims on behalf of himself and "all of those similarly situated and not yet identified." (*Id.*, PageID.1.) The Court will construe Plaintiff's complaint as including a request for class certification.

The purposes of class action suits are judicial economy and the opportunity to bring claims that would not be brought absent the class action because it might not be economically feasible to bring them as individual claims. *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 650 (6th Cir. 2006). Federal Rule of Civil Procedure 23, which governs class certification, provides that:

> One or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder ... is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The four prerequisites for class certification are respectively referred to as "numerosity, commonality, typicality, and adequacy of representation." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006).

Thus, for a case to proceed as a class action, the Court must be satisfied on the grounds enumerated above, including the adequacy of class representation. *See* Fed. R. Civ. P. 23(a)(4). Plaintiffs bear the burden of establishing the right to class certification. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996).

4

It is well established that *pro se* litigants are "inadequate class representatives." *Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citations omitted); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (recognizing that "[g]enerally pro se prisoners cannot adequately represent a class" (citing *Fymbo v. State Farm & Cas. Co.*, 213 F.3d 1320, 1321 (10thCir. 2000))); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (recognizing that "[*p*]*ro se* prisoners generally may not bring class action lawsuits concerning prison conditions" (citing *Dean v. Blanchard*, 865 F.2d 257 (6th Cir. 1988) (table); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975))); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001) (concluding that "pro se prisoners are not able to represent fairly [a] class" (citing *Fymbo*, 213 F.3d at 1321; *Oxendine,* 509 F.2d at 1407)); *Marr v. Michigan*, No. 95-1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996) (noting that "an imprisoned litigant who is not represented by counsel may not represent a class of inmates because the prisoner cannot adequately represent the interests of the class" (citing *Oxendine*, 509 F.2d at 1407)). Because Plaintiff is an incarcerated *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Plaintiff's request for class certification will, therefore, be denied.

### III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff indicates that he intends to bring claims for violation of his Fifth, Eighth, and Fourteenth Amendment rights.

#### 1. Fifth and Fourteenth Amendment Claims

Plaintiff contends that Defendants' actions (or inactions) have violated his Fifth Amendment rights. Plaintiff presumably intends to assert a Fifth Amendment due process claim. The Fifth Amendment's Due Process Clause, however, applies only to claims against federal employees. Here, Plaintiff has sued state employees. Plaintiff, therefore, cannot maintain a Fifth Amendment due process claim; his claim will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*,

6

205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

Plaintiff also asserts that Defendants violated Plaintiff's rights under the Fourteenth Amendment. The Court construes Plaintiff to be asserting a Fourteenth Amendment substantive due process claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

However, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to Plaintiff's claim for relief concerning the COVID-19 pandemic and Defendants' failure to protect him. Consequently, Plaintiff's Fourteenth Amendment substantive due process claim will be dismissed.

### 2. Eighth Amendment Claims

Plaintiff's primary claim is that Defendants violated Plaintiff's Eighth Amendment rights by demonstrating deliberate indifference to the risk posed by the COVID-19 virus. Plaintiff relies

7

upon the facts of *Brooks I* and, presumably, the Sixth Circuit's decision in *Brooks v. Washington*, No. 21-2639, 2022 WL 22629162, at *1 (6th Cir. Mar. 30, 2022) (*Brooks II*), to support his claim. (ECF No. 1, PageID.3, 5). In *Brooks*, the plaintiffs sued Defendants Washington, Horton, and two URF shift commanders not named in the present lawsuit related to the actions (or inactions) of the defendants in response to the COVID-19 pandemic. *Brooks I* at *1. The Sixth Circuit reversed the dismissal of the complaint on screening, finding that it was improper for the district court to rely upon information from outside the record that was not subject to judicial notice. *Brooks II* at *3. In so doing, the Sixth Circuit further held that "while Brooks may ultimately be unsuccessful is securing the relief he seeks, he has nevertheless put forth sufficient allegations that the defendants knew of and disregarded an excessive risk to inmate health or safety." *Id.*

Given the Sixth Circuit's decision in *Brooks II*, the Court will not dismiss Plaintiff's claims against Defendants Washington and Horton on screening. However, *Brooks I* and *II* do not address Plaintiff's claims against Defendants Corrigan, Woodgate, Dicus, and Unknown "John Does" and "Jane Does." The Court will address Plaintiff's claims against these remaining Defendants below.

      **a.**      **Unknown Doe Defendants**

Plaintiff fails to allege sufficient facts showing how Defendants Unknown "John Does" and "Jane Does" were personally involved in any alleged violation of Plaintiff's constitutional rights. (*See generally* ECF No. 1.) Plaintiff lists these Defendants in the action. However, Plaintiff fails to include Defendants Unknown "John Does" and "Jane Does" when setting forth his factual allegations. (*See id.*) Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the

8

complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Although Plaintiff makes allegations against "Defendants" as a whole, Plaintiff does not identify these officers as Defendants Unknown "John Does" and "Jane Does," and any "[s]ummary reference to a single, five-headed 'Defendants' [or officers] does not support a reasonable inference that each Defendant is liable . . . " *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Thus, Plaintiff's claims against Defendants Unknown "John Does" and "Jane Does" fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### b. Defendant Corrigan

As discussed above, Plaintiff must allege, with particularity, what each individual Defendant did to violate Plaintiff's constitutional rights. *See Boxill*, 935 F.3d at 518. Plaintiff's only factual allegation against Defendant Corrigan, specifically, is that Defendant Corrigan allowed Plaintiff's E unit to interact with the general population until December 8, 2020, when a lock down of the facility was ordered. (ECF No. 1, PageID.3.) However, Plaintiff does not allege that the general population prisoners with whom the E unit was permitted to interact were COVID-19-positive, let alone that Defendant Corrigan *knew* of this fact but nonetheless disregarded the excessive risk to inmate safety that would have resulted from intermingling. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Dykes-Bey v. Washington*, No. 21-1260, 2021 WL 7540173, at *2–3 (6th Cir. Oct. 14, 2021) (explaining that the plaintiff had not alleged sufficient facts to

satisfy the subjective prong of the deliberate indifference standard where the plaintiff did not allege that defendants "knowingly housed COVID-19-positive inmates alongside [ ] any plaintiff") (footnote omitted).

At most, Plaintiff alleges that Defendant Corrigan was negligent in allowing groups of prisoners to intermingle, thus increasing the possibility that E unit prisoners would contract COVID-19. However, negligence is not enough to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835. Because Plaintiff fails to allege sufficient facts to plausibly suggest that Defendant Corrigan was deliberately indifferent, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Corrigan.

### c.     Defendants Woodgate and Dicus

Plaintiff alleges that Defendants Woodgate and Dicus worked without wearing PPE or a mask, which Plaintiff believes increased the chance that prisoners would contract COVID-19. (ECF No. 1, PageID.7.) Plaintiff also alleges that, in October 2020, Defendant Woodgate came to work while infected with COVID-19 and was sent home. (ECF No. 1, PageID.3, 7.) While these actions could be described as negligent, noticeably absent from Plaintiff's complaint is any factual allegation that would suggest that Defendants subjectively *knew* at the time that they worked without masks or at the time that Defendant Woodgate arrived at work while infected that they were placing prisoners at a substantial risk of serious harm. *See Farmer*, 511 U.S. at 842; *Dykes-Bey*, 2021 WL 7540173 at *2. Indeed, there is nothing to indicate that Defendants Woodgate and Dicus were infected with COVID-19 when they worked without masks, or that Defendant Woodgate was aware that he was positive for COVID-19 at the time that he arrived for work. Accordingly, the Court will also dismiss Plaintiff's Eighth Amendment claims against Defendants Woodgate and Dicus.

10

### B. State Law Claims

Plaintiff also indicates that he intends to bring supplemental claims against Defendants for violation of state law. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). With respect to Defendants Unknown "John Does" and "Jane Does," Corrigan, Woodgate, and Dicus, because Plaintiff's federal claims against these Defendants will be dismissed, the Court will dismiss Plaintiff's state law claims against these Defendants without prejudice.

As to Defendants Washington and Horton, because Plaintiff continues to have a pending federal claim against them, the Court will exercise supplemental jurisdiction over his state law claims against Defendants Washington and Horton.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Unknown "John Does" and "Jane Does," Corrigan, Woodgate, and Dicus will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims against these Defendants without prejudice. The Court will also dismiss, for failure to state a claim, Plaintiff's Fifth and Fourteenth Amendment claims against remaining Defendants Washington and Horton. Plaintiff's Eighth Amendment and supplemental state law

claims against Defendants Washington and Horton remain in the case. The Court will deny Plaintiff's request for class certification.

An order consistent with this opinion will be entered.

Dated: June 20, 2024  /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE